LILLIAN GRAHAM v. MARGARET HOKE, ADMINISTRATRIX OF J. G. PHILLIPS, DECEASED.

(Filed 31 May, 1941.)

**1. Banks and Banking § 8a: Bills and Notes § 1—**

An order on a bank, in the form of a check, to pay a designated person a specified sum at the death of the drawer is entirely without effect, since by its terms it has no effect as long as the drawer lives, and his death revokes any authority of the bank to make payment to the drawee.

**2. Wills § 5—**

The complaint alleged that plaintiff was a member of intestate's family and performed domestic services for him at his request in reliance upon a written agreement for payment. The written agreement alleged consisted of an order on a bank in the form of a check to pay plaintiff a designated sum out of drawer's estate. *Held:* The written agreement declared upon being entirely ineffective, and there being no allegation of an implied contract of *quantum meruit,* defendant administratrix' demurrer should have been sustained.

APPEAL by defendant from judgment of *Nimocks, J.,* overruling demurrer, at March Term, 1941, of LEE.

*Hastings, Booe & Abbott for plaintiff, appellee.*
*K. R. Hoyle for defendant, appellant.*

SCHENCK, J.   The pertinent portions of the complaint are as follows: "3. That on January 26, 1925, the deceased, J. G. Phillips, entered into a written agreement with the plaintiff, in which he promised the plaintiff $2,000.00, to be paid to her out of his estate at his death, said agreement is hereby incorporated by reference in as full and ample a manner as if set out word for word in these pleadings, and which contract will be offered in evidence at the trial of this cause.

"4. That prior to the execution of the agreement referred to above, and as consideration for same and for about two years beginning in 1919, immediately after the death of J. G. Phillips' second wife, the plaintiff worked for J. G. Phillips in his store in Sanford, and also helped keep house and care for his three children. That J. G. Phillips induced plaintiff, in the Fall of 1921, to go to the Mary Potter Boarding School and take a three-month special course in cooking and sewing; and in the Spring of 1922 the plaintiff, at the request of J. G. Phillips, went to Morristown, Tenn., and kept house for J. G. Phillips and his invalid third wife. From 1922 until death of J. G. Phillips' third wife, in 1924, plaintiff cared for J. G. Phillips' invalid wife and his home in Morristown, and after her death, and upon request of J. G. Phillips, came with J. G. Phillips to Winston-Salem and kept J. G. Phillips' house and cared for J. G. Phillips' children. During all this time plaintiff was not receiving any weekly pay, but was treated as a member of J. G. Phillips' family, J. G. Phillips informing her that she would be taken care of at his death and giving her the contract referred to in paragraph 3 of this complaint as evidence of his promise and intentions."

The alleged "written agreement" is in words and figures as follows (italics indicate handwriting in ink, the balance of instrument being a printed form):

"Winston-Salem, N. C.

*Jan. 26, 1925* No........

WACHOVIA BANK and TRUST COMPANY

PAY TO THE

ORDER OF *Lillian Graham at my death*

$2000.00 *TWO THOUSAND* DOLLARS

*out of my estate payable $500*
*at each payment till all has*
*been paid.*

*J. G. Phillips*"

The defendant demurred to the complaint upon the grounds that it does not state facts sufficient to constitute a cause of action.

The "written agreement" alleged in the complaint cannot be construed *ex vi termini* as a valid contract to pay a member of the family of the deceased for domestic services rendered, since it is in the form of a cheque payable upon the death of the drawer. It became *functus officio* at the death of the drawer, as the death of the drawer before presentation of the cheque for payment revoked any authority of the bank to make payment to the drawee; and the cheque by its terms never had any validity as long as the drawer lived.

It is specifically alleged that the plaintiff was a member of the family of the deceased in these words: "During all this time plaintiff was not receiving any weekly pay, but was treated as a member of J. G. Phillips' family." As a member of the family of the deceased she was presumed to have rendered the alleged services gratuitously, and in the absence of an allegation of a valid special contract that she was to be paid therefor there is no cause of action alleged. The plaintiff is not aided by the allegation that the deceased informed her "that she would be taken care of at his death and giving her the contract referred to . . . as evidence of his promise and intentions." The words of this allegation do not create a special contract of the alleged "written agreement" which had neither vitality nor validity as such; and no implied contract to pay for the services rendered upon a *quantum meruit* is alleged.

The plaintiff having declared upon a "written agreement," as a special contract, she is not allowed to likewise declare upon an implied contract of *quantum meruit,* and in truth she has not so declared. True she may have pleaded an implied contract as well as a special contract in the alternative, but when the case came on for trial she could have been compelled to elect upon which declaration she would proceed.

The alleged "written agreement," not being executed in a manner to constitute testamentary disposition, cannot be construed as such, and furthermore this is not an appropriate form of action to establish a will.

In view of the allegation that the plaintiff was a member of the family of the deceased when she rendered the alleged domestic services, and of the absence of an allegation of a valid special contract to be paid therefor, and of the absence of an allegation of an implied contract of *quantum meruit,* we are constrained to hold that his Honor erred in overruling the demurrer.

The judgment of the Superior Court is
Reversed.